**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 24 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SAMUEL ALLEN PRINGLE,

Defendant - Appellant.

No. 01-2341

(D. New Mexico)

(D.C. No. CR-00-1242-LH)

**ORDER AND JUDGMENT** *

Before **O'BRIEN**, **McWILLIAMS**, and **ANDERSON**, Circuit Judges.

Reserving the right to appeal the district court's denial of his motion to suppress evidence, Appellant Samuel Pringle pled guilty to possessing with intent to distribute more than 50 grams of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)B), and 18 U.S.C. § 2, and was sentenced to 70 months imprisonment. On appeal, Mr. Pringle contends that: (1) when stripped of improper material, the affidavit in support of the search warrant

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

was insufficient to establish probable cause; (2) the warrant was not sufficiently particular in its description of the items to be seized or the criminal activity alleged; and (3) the officers exceeded the scope of the warrant when they opened a locked safe in Pringle's residence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## BACKGROUND

On the evening of August 16, 2000, Officers Scott and Briseno of the Region II Narcotics Task Force in New Mexico conducted a "knock and talk" at the home of Samuel Pringle and Darcy Clevenger. The previous day a fellow narcotics officer, Officer Burnham, had told them that two sources, a confidential informant with whom he was working and an anonymous concerned citizen, had informed him that Pringle was growing and drying marijuana in his house.

Without getting a warrant, Scott and Briseno proceeded to Pringle's house in hopes of getting further information supporting probable cause to search the house. As they approached the house, Scott noticed a strong scent of air freshener, which, from his training, he knew was often used by drug dealers to mask the smell of drugs. When Pringle opened the door Scott smelled an "overwhelming" odor of "raw" marijuana coming from inside the house, whereupon the officers sought, but were denied, permission to enter the house and

talk with Pringle. Scott informed Briseno, who had also smelled the marijuana, that he had smelled marijuana. He then asked Pringle if anyone else was in the house. Pringle told them that only Darcy Clevenger, his girlfriend, was inside.

Officer Briseno stepped inside the home and asked Clevenger to come outside. After she complied he conducted a quick sweep of the house because he feared someone else might be inside destroying evidence. He also believed the sweep was necessary to insure his and Scott's safety against potential attack from others who might still be inside the house. While inside, Briseno saw growing marijuana plants as well as marijuana drying.

While Briseno was conducting the sweep, Scott told Pringle that he had smelled a strong odor of marijuana coming from inside the house. According to Scott, Pringle replied that he smoked a lot of marijuana and that there was a quarter or a half pound of marijuana inside the house.

After Briseno was finished with the sweep, Scott asked Pringle if they could continue the conversation inside the house. Scott claimed, and Pringle denied, that Pringle consented. In any event, the questioning moved inside the house. While inside the house, Scott saw growing marijuana plants and marijuana drying.

Together with backup officers who had since arrived at the scene, Briseno detained Pringle and Clevenger while Scott went to get a warrant. In his affidavit

requesting a warrant, Scott relied on the following facts to establish probable cause: (1) the tip from the confidential informant; (2) the tip from the anonymous concerned citizen; (3) the overpowering smell of air freshener; (4) the smell of raw marijuana emanating from the house; (5) Pringle's statement that there was a quarter pound of marijuana inside the house; (6) Pringle's statement that he smoked a lot of marijuana; (7) Officer Briseno's observation of marijuana inside the house; and (8) Officer Scott's observation of marijuana inside the house. The magistrate judge issued a warrant directing the police to search anything within the curtilage of the house and to seize any item among a long list of items related to drug use, manufacture, and sale.

Scott then returned with the warrant, and the officers commenced a search. In the course of the search the officers found two locked safes in one of the bedrooms. Scott obtained the keys from Pringle and opened the safes. In one of the safes he found a substance that was identified as methamphetamine.

Pringle was charged with possessing with intent to distribute more than 50 grams of a substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)B), and 18 U.S.C. § 2.

Subsequently Pringle filed a motion in district court to suppress the evidence obtained during the search of his home. He argued that the evidence should be suppressed because: (1) he alleged that some of the information upon

which probable cause was based was illegally obtained and when that information was excluded from consideration, the affidavit did not provide sufficient basis to find probable cause; (2) the warrant was not sufficiently particular because it allowed the officers to seize "anything within the curtilage" of the house, the list of items to be seized did not effectively constrain the officers, and the allegation of criminal activity was not specific enough; and (3) the officers exceeded the scope of the warrant by opening a locked safe that was found in the residence.

After a hearing, the district court found that Pringle had not consented, either initially or after Briseno's protective sweep, to a search of his house and that there were no exigent or other circumstances justifying a warrantless entry into the house. Therefore, the court excluded items 7 and 8 [1] (the marijuana seen by the officers inside the house) from the affidavit. It then found that the remaining evidence in the affidavit was sufficient to establish a substantial basis for probable cause. The court rejected Pringle's other arguments for suppression and denied his motion to suppress.

---

[1] It is not clear from the district court's opinion whether it also excluded items 5 and 6 – the statements allegedly made by the Appellant that there was a quarter pound of marijuana in the house and that he smoked a lot of marijuana. It is clear, however, that the district court did not rely on these statements in its opinion. Because we find that even without these statements there were sufficient facts on the record for the magistrate to have a substantial basis to find probable cause, we need not determine whether these statements were illegally obtained.

On appeal, Pringle renews the arguments he made in his motion to suppress.

## DISCUSSION

### I. Probable Cause for the Issuance of the Warrant

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend IV. "In determining whether probable cause supported the issuance of a search warrant, we give 'great deference' to the decision of the issuing magistrate." United States v. Cusumano, 83 F.3d 1247, 1250 (10th Cir. 1996) (quoting United States v. Williams, 45 F.3d 1481, 1485 (10th Cir. 1995)); see Illinois v. Gates, 462 U.S. 213, 236 (1983). Accordingly we ask only whether the issuing magistrate had a "substantial basis" under the totality of the circumstances for finding probable cause. See Gates, 462 U.S. at 238; see also Cusumano, 83 F.3d at 1250. "In our review, we may disregard allegedly tainted material in the affidavit and ask whether sufficient facts remain to establish probable cause." Cusumano, 83 F.3d at 1250 (citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978)).

As indicated above, the district court found that because the initial entry into the house was improper, the evidence obtained while Officers Briseno and Scott were in the house prior to obtaining the search warrant could not be a part

of the probable cause calculus.    See  Mem. Op. and Order at 7 R. Vol. I, tab 39.

After excising that material, the following facts from the affidavit remained:

(1) a confidential informant, with whom a fellow narcotics officer was working, informed the police that Pringle was growing and drying marijuana in his home; (2) an anonymous concerned citizen provided a similar tip; (3) Officer Scott smelled a strong odor of air freshener, which he knew was used to mask the odor of controlled substances, emanating from the house prior to knocking on the door; and (4) Officer Scott smelled the odor of "raw marijuana" coming from inside the house when Pringle opened the door.    [2]

Pringle first argues that the evidence from the confidential informant should be treated as an anonymous tip because there is nothing in the affidavit that attests to the informant's basis of knowledge or reliability as a source of information.  We disagree.  The affidavit avers that the confidential informant was a person with whom Officer Burnham, a police officer in the Narcotics Division, was working.  The magistrate could reasonably deduce that a confidential informant working with an officer in the Narcotics Division was

_____

[2]The district court's ruling on the motion to suppress focused largely on the smell of marijuana as the basis for probable cause.  Though it is not clear whether the district court found probable cause on the basis of smell alone, we need not pursue the point since the affidavit as excised alleged more than smell.  See Ruiz v. McDonnell, 299 F.3d 1173, 1182 (10th Cir. 2002) (noting that "we may affirm on any grounds supported by the record").

-7-

known to the officer and that the information given was more reliable than an anonymous tip. Supported by this and the facts regarding odor discussed below, the information given by the anonymous tipster could also be taken into account by the magistrate in the affidavit.

Pringle next challenges the odor evidence. He alleges that the district court's factual finding that the officers smelled marijuana when Pringle opened the door was clearly erroneous. We review the district court's factual findings for clear error and interpret all evidence in the light most favorable to the district court's ruling. United States v. Hudson, 210 F.3d 1184, 1190 (10th Cir. 2000). Viewed in the light most favorable to the government, Officer Scott's testimony at the hearing on the motion to suppress that there were fans blowing directly from the rooms where the marijuana was drying to the front door was sufficient to establish that, notwithstanding the relatively small amount of marijuana and the attempts to mask its smell, the officers could have smelled the marijuana while standing on the front porch. Tr. of Mot. to Suppress Proceedings at 41-42, R. Vol. III.

Pringle also contends that Officer Scott's affidavit does not suffice under the standard established in Johnson v. United States, 333 U.S. 10 (1948) because the magistrate had no basis on which to conclude that Scott was trained to detect the odor of marijuana. Id. at 13 (holding that magistrate must find affiant

qualified to recognize an odor). To the contrary, the affidavit avers that Scott has received training in "the detection . . . of crimes relating to the controlled substance laws of the State of New Mexico." Aff. for Search Warrant at 3, R. Vol. I, tab 20, Exhibit C. It also established that he was assigned to the Region II Narcotics Enforcement Task Force. See id. Evidence of training and experience in the field of drug crime investigation is sufficient to establish a substantial basis on which the magistrate could conclude that Officer Scott was trained to recognize the odor of marijuana. The magistrate could also conclude that Scott's training alerted him to the use of air freshener as a masking agent, thus giving the magistrate an additional factor to consider in his probable cause determination.

We conclude that the facts remaining in the affidavit were more than sufficient for the magistrate properly to conclude that there was a substantial probability that contraband – marijuana – and evidence of a crime – cash and other accouterments of drug manufacture and sale – would be found at the location specified in the search warrant.

## II.    Scope of the Warrant

Pringle claims that the warrant was insufficiently particular in three ways: (1) it allowed the officers to seize "anything within the curtilage" of the house; (2) the length of the list of items to be seized together with language that the

search was "not limited to" those items gave the officers too much discretion in what they could seize; and (3) the warrant did not adequately describe the criminal activity alleged. We review all of these claims de novo. See United States v. Guidry, 199 F.3d 1150, 1154 (10th Cir. 1999).

The Fourth Amendment requires that a warrant "describe the items to be seized with sufficient particularity to prevent a 'general, exploratory rummaging in a person's belongings.'" United States v. Snow, 919 F.2d 1458, 1461 (10th Cir. 1990) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." Voss v. Bergsgaard, 774 F.2d 402, 404 (10th Cir. 1985). "We apply a practical test to this requirement . . . . [A] warrant's description of things to be seized is sufficiently particular if it allows the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Finnigin, 113 F.3d 1182, 1186-87 (10th Cir. 1997) (quotation omitted).

Pringle cites no case to support his first argument, that a warrant authorizing the police to search "anything within the curtilage" is insufficiently particular in its description of the items to be seized. Taken in context, the language Pringle challenges describes the place to be searched, not the items to be seized. See Aff. for Search Warrant at 3-4, R. Vol. I, tab 20, Exhibit C. Indeed,

he concedes that he "does not argue that there were areas at the residence where officers could not go using the warrant." Appellant's Br. at 28. Therefore his attack on the "anything within the curtilage" language is misplaced.

Pringle next challenges the list of items to be seized. The warrant directed the officers to seize:

> drugs packaging materials such as baggies, tools for cutting, such as razor blades or knives, scales for weighing [drugs], booklets on how to cultivate marijuana, equipment used to cultivate marijuana, and records of their illicit dealings on notepads or other similar paper products, or on computer hard drives or floppy drives . . . cash . . . property which may indicate ownership or use of the above described location and vehicles, including, but not limited to letters addressed to the occupants, insurance and registration papers, notes, photos, and clothes that indicate the size, age and sex of the occupants.

Aff. for Search Warrant at 5, R. Vol. I, tab 20, Exhibit C. He cites no case supporting his argument that lists such as this violate the Fourth Amendment. Furthermore, we have upheld a nearly identical warrant, which also included a "but not limited to" clause. See United States v. Sullivan, 919 F.2d 1403, 1424 and n.31 (10th Cir. 1990). Though broadly drawn, in cases dealing with probable drug trafficking, such lists provide the particularity that allows searchers to "reasonably ascertain and identify the things authorized to be seized," as required by the Fourth Amendment. Finnigin, 113 F.3d at 1187 (quotation omitted); see United States v. Wicks, 995 F.2d 964, 973 (10th Cir. 1993) ("We have upheld search warrants cast in comparably broad terms, where the subject of the search

was a drug trafficking or drug dealing business, and where circumstances permitted only a more general listing of the items to be seized."). While we recognize that the warrant in this case authorized the officers to examine many documents and items of a personal nature, "allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records.'" United States v. Riley, 906 F.2d 841, 845 (2nd Cir. 1990).

Finally, Pringle argues that the search warrant was insufficiently particular because it did not specify whether the criminal activity alleged was "drug possession, drug manufacture, or drug distribution." Appellant's Br. at 28. Pringle cites no case requiring the type of specificity that he seeks. Rather, what is required of a warrant, including its description of the criminal activity alleged, is that it "allow the executing officers to distinguish between items that may and may not be seized." United States v. Leary, 846 F.2d 592, 602 (10th Cir. 1998). We conclude that the description of criminal activity in the affidavit, which was incorporated into the search warrant, was specific enough to accomplish this purpose.

## III.    Search of the Safes

Pringle's final argument is that a warrant authorizing a search of a house does not authorize the search of locked safes within the house.  In effect, he contends that every time the police find a locked safe they must suspend the search to get an additional warrant.  We disagree.

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.  Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found . . . . [N]ice distinctions between closets, drawers, and containers . . . must give way to the interest in the prompt and efficient completion of the task at hand.

United States v. Ross  , 456 U.S. 798, 820-21 (1982) (footnote omitted).  "This rule applies equally to all containers."     Id. at 822.  Following this rule, we have allowed the search of a locked safe where the items in the search warrant were likely to be found therein.     See Snow, 919 F.2d at 1461 ("The locked safe was a likely source for the specified documents and could therefore be opened.").  Here the warrant directed the officers to seize cash.     [3]  A locked safe is a "likely source"

---

[3]Pringle argues for the first time on appeal that without the observation of the marijuana by Officers Scott and Briseno when they were illegally in the house there would be no basis to conclude that Pringle was selling marijuana rather than simply growing it for personal consumption.  There would, therefore, be no basis to search for cash, thus undermining the district court's ruling that the search for cash justified the opening of the safes.  We review arguments raised for the first

(continued...)

for cash.  Therefore, as the district court found, the search warrant directing the officers to search for cash authorized the opening of the safes.  No additional warrant was necessary.

## CONCLUSION

For the foregoing reasons the decision of the district court is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[3](...continued)
time on appeal for plain error.  United States v. Avery, 295 F.3d 1158, 1182-82 (10th Cir.), cert. denied, 123 S. Ct. 546 (2002).  There was no plain error here.

-14-