## Commonwealth vs. Kiiyan Jackson.

Suffolk. December 6, 2012. - April 5, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Controlled Substances. Arrest. Constitutional Law,* Search and seizure, Arrest, Probable cause. *Search and Seizure,* Probable cause, Arrest, Search incident to lawful arrest, Fruits of illegal arrest. *Evidence,* Result of illegal search.

A Boston Municipal Court judge erred in denying the criminal defendant's pretrial motion to suppress evidence of marijuana seized after a warrantless search of the defendant's person and backpack, where the search was not justified as one incident to a lawful arrest, in that the social sharing of marijuana by the defendant with his companions was akin to simple possession and did not constitute the facilitation of a drug transfer from seller to buyer that remains the hallmark of drug distribution [760-766]; and where police officers' observation of the defendant with a marijuana cigarette did not give them probable cause to believe that he possessed more than one ounce of marijuana [766].

Complaint received and sworn to in the Central Division of the Boston Municipal Court Department on September 20, 2010.

A pretrial motion to suppress evidence was heard by *Robert E. Baylor,* J., and a motion for reconsideration was considered by him.

An application for leave to prosecute an interlocutory appeal was allowed by *Botsford,* J., in the Supreme Judicial Court for the county of Suffolk, and the case was reported by her to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Ilse Nehring* for the defendant.

*Zachary Hillman,* Assistant District Attorney, for the Commonwealth.

Duffly, J. After police officers observed the defendant sharing what appeared to be a marijuana cigarette with two others on a park bench, they seized the cigarette and conducted a warrantless search of the defendant's person and backpack. In the

backpack, they discovered a substance resembling marijuana packaged in small plastic bags, with a total weight of less than one ounce. The defendant was arrested and charged with possession of a class D substance (marijuana) with intent to distribute, G. L. c. 94C, § 32C (*a*), and a corresponding drug violation in or near a school or park, G. L. c. 94C, § 32J.

The defendant moved to suppress the evidence obtained from the warrantless search of his person and backpack, contending that the search violated the Fourth and Fourteenth Amendments to the United States Constitution; arts. 12 and 14 of the Massachusetts Declaration of Rights; and G. L. c. 276, § 1. After an evidentiary hearing, a judge in the Boston Municipal Court denied the motion, and also denied the defendant's motion for reconsideration. A single justice of this court allowed the defendant's application for leave to file an interlocutory appeal in the Appeals Court, pursuant to Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). We transferred the case to this court on our own motion.

We conclude that the search was not a lawful search incident to arrest, because the officers had no basis to arrest the defendant before searching him. The officers' observation of the defendant and two others passing what appeared to be a marijuana cigarette back and forth did not provide probable cause to believe the defendant was committing a crime. Therefore, the defendant's motion to suppress should have been allowed.

1. *Background.* We summarize the motion judge's findings of fact, supplemented by certain undisputed facts introduced by the testimony of officers whom the motion judge implicitly found to be credible. See *Commonwealth v. Isaiah I.*, 448 Mass. 334, 337 (2007), *S.C.*, 450 Mass. 818 (2008).

The "Boston Freedom Rally," also known as "Hempfest," was an annual event held to promote the legalization of marijuana. Thousands of people attended the 2010 Hempfest on Boston Common on Saturday, September 18, 2010. Officers Patrick Byrne and Brian Mahoney of the Boston police department's drug control unit were assigned to patrol Hempfest in plain clothes in order to enforce the drug laws.

At approximately 1:45 P.M., Byrne and Mahoney observed three men sitting on a bench, passing a cigarette back and forth.

The officers detected the smell of burnt marijuana emanating from the cigarette and approached the three men, one of whom was the defendant. Byrne and Mahoney identified themselves as police officers, and Mahoney seized the cigarette from one of the defendant's companions. Mahoney asked the men for identification in order to issue civil citations for the possession of one ounce or less of marijuana. See G. L. c. 94C, § 32L.

The defendant stood up, and Byrne observed part of a plastic bag protruding from the defendant's left pocket. Byrne pulled the bag from the defendant's pocket and examined its contents; the bag contained a substance resembling marijuana. Mahoney conducted a patfrisk of the defendant, recovering a black folding knife from the defendant's other pocket. During the patfrisk, Mahoney attempted to move a backpack at the defendant's feet. In response, the defendant told Mahoney, "Don't touch my bag." Notwithstanding the defendant's request, Mahoney lifted the backpack and opened it. According to Mahoney, the backpack smelled like marijuana, but he was unsure how much marijuana might have been inside.

Inside the backpack, Mahoney discovered numerous plastic bags with the corners torn off, which Mahoney believed to be consistent with drug distribution. Mahoney handed the backpack to Byrne, who searched the backpack further and discovered a plastic container, which he opened. Within that container, he found a large plastic bag and approximately ten small plastic bags containing a substance resembling marijuana. The total weight of the substances seized was 23.5 grams, which is less than one ounce.[1]

2. *Discussion.* "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact unless they are clearly erroneous but independently review the judge's ultimate findings and conclusions of law." *Commonwealth* v. *Phifer,* 463 Mass. 790, 793 (2012), quoting *Commonwealth* v. *Anderson,* 461 Mass. 616, 619, cert. denied, 133 S. Ct. 433 (2012). Where a search and arrest were made without a warrant, "the Commonwealth bears the burden of establishing that the actions of the police met constitutional standards." *Com-*

---

[1]One ounce is equivalent in weight to 28.3495 grams.

monwealth v. *Chown*, 459 Mass. 756, 763 (2011), quoting *Commonwealth* v. *Santaliz*, 413 Mass. 238, 240 (1992).

a. *Search incident to lawful arrest.* A search incident to a lawful arrest is one of the few "well settled" exceptions to the general rule that warrantless searches are per se unreasonable under the Fourth Amendment and art. 14. See *Commonwealth* v. *Phifer, supra,* quoting *United States* v. *Robinson,* 414 U.S. 218, 224, 233 (1973). The legality of the search depends on the legality of the arrest, although "the search may precede the formal arrest so long as probable cause [to arrest] exists independent of the results of the search," and the arrest and search are "roughly contemporaneous." *Commonwealth* v. *Washington,* 449 Mass. 476, 481 (2007). A lawful arrest requires the existence of probable cause to believe that the individual arrested is committing or has committed a criminal offense. See *Commonwealth* v. *Chown, supra.*

This case turns on whether Officers Byrne and Mahoney lawfully could have arrested the defendant after observing him share with his companions a cigarette that the officers reasonably suspected to contain marijuana. If not, their search of the defendant and his backpack cannot be justified as a search incident to a lawful arrest. The Commonwealth argues that the officers could have arrested the defendant because they had probable cause to believe that he had or was about to commit the crime of marijuana distribution, G. L. c. 94C, § 32C (*a*).[2] This argument requires us to resolve the issue reserved in *Commonwealth* v. *Keefner,* 461 Mass. 507, 515 & n.4 (2012) (*Keefner*): whether the voters' adoption of "An Act establishing a sensible State marihuana policy" (2008 initiative) decriminalized the social sharing of one ounce or less of marijuana by modifying which acts constitute distribution under G. L. c. 94C, § 32C (*a*) (distribution statute). See St. 2008, c. 387; *Keefner, supra.* The 2008 initiative, "in the main, changed the status of the possession of one ounce or less of marijuana from a criminal offense to a civil offense." *Id.* at 509.

---

[2]General Laws c. 94C, § 32C (*a*), provides: "Any person who knowingly or intentionally . . . distributes . . . [marijuana] shall be imprisoned in a jail or house of correction for not more than two years or by a fine of not less than five hundred nor more than five thousand dollars, or both such fine and imprisonment."

We interpret the 2008 initiative, codified in relevant part at G. L. c. 94C, § 32L, "as we would any other statute adopted in the normal legislative process." *Commonwealth* v. *Cruz*, 459 Mass. 459, 471 n.22 (2011) (*Cruz*). We interpret a statute according to "all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975), quoting *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975). See *Keefner, supra* at 511. "In discerning a statute's meaning, '[w]e interpret the words used in a statute with regard to both their literal meaning and the purpose and history of the statute within which they appear.' " *Atlanticare Med. Ctr.* v. *Commissioner of the Div. of Med. Assistance*, 439 Mass. 1, 6 (2003), quoting *Massachusetts Hosp. Ass'n* v. *Department of Med. Sec.*, 412 Mass. 340, 346 (1992). "Significantly, a statute must be interpreted 'as a whole'; it is improper to confine interpretation to the single section to be construed." *Keefner, supra* at 511, quoting *Wolfe* v. *Gormally*, 440 Mass. 699, 704 (2004).

As a threshold matter, G. L. c. 94C, § 32L, third par., states that the decriminalization of small amounts of marijuana shall not "be construed to repeal or modify" the following four categories of existing laws: those concerning (1) the operation of motor vehicles "or other actions taken while under the influence of" marijuana, (2) unlawful possession of prescription forms of marijuana, (3) possession of more than one ounce of marijuana, and (4) the "selling, manufacturing or trafficking" in marijuana. We held in *Keefner, supra* at 514-515, that this list "cannot be construed as exhaustive," and that distributing one ounce or less of marijuana remains a crime. However, we explicitly left open the possibility that the 2008 initiative modified the definition of what constitutes distribution under the distribution statute, such that the social sharing of marijuana is no longer a crime. See *id.* at 515.[3]

We begin with an examination of the distribution statute.

---

[3]Indeed, we expressed doubt in *Commonwealth* v. *Keefner*, 461 Mass. 507,

Certain relevant terms are defined by the statute: "[d]istribute" means "to deliver other than by administering or dispensing a controlled substance"; "[d]eliver" means "to transfer, whether by actual or constructive transfer, a controlled substance from one person to another, whether or not there is an agency relationship." G. L. c. 94C, § 1. "Transfer" is undefined in the statute, but its dictionary meaning is to "convey or remove from one place or one person to another; to pass or hand over from one to another, [especially] to change over the possession or control of." Black's Law Dictionary 1636 (9th ed. 2009).

In interpreting the distribution statute in situations where a defendant purchases drugs and then gives them to others, we have distinguished between "circumstances where a defendant facilitates a transfer of drugs from a seller to a buyer," which can constitute the crime of distribution even if the defendant intends to share some of the drug with the buyer, *Commonwealth* v. *Fluellen*, 456 Mass. 517, 524-525 (2010), and "the passing of a drug between joint possessors who simultaneously acquire possession at the outset for their own use," which does not constitute distribution. *Commonwealth* v. *Johnson*, 413 Mass. 598, 605 (1992). See *Commonwealth* v. *Rodriguez*, 456 Mass. 578, 584 n.8 (2010) (distinguishing between "the defendant's transfer of cocaine he had just purchased, which would constitute distribution, [and] his division of the cocaine that [he and another] had simultaneously and jointly acquired, which would constitute joint possession"). The unifying principle underlying

515 n.4 (2012), that the social sharing of marijuana constitutes the crime of distribution, in light of G. L. c. 94C, § 32L. We observed that, if the social sharing of marijuana did amount to drug distribution, the following "ironic consequence" would result:

> "[T]he Commonwealth may criminally charge each person who passed the marijuana cigarette to another with distribution of marijuana or possession with intent to distribute, in violation of [G. L. c. 94C,] § 32C (*a*), even though such individuals could not be charged criminally with possession of marijuana, because the amount of marijuana each possessed was one ounce or less. The ironic consequence of such an interpretation would be that, as a result of the passage of G. L. c. 94C, § 32L, which was intended to decriminalize the possession of a small quantity of marijuana, individuals who share a marijuana cigarette would still be charged criminally, but the charge would now be more serious than simple possession, with a maximum sentence of two years in a house of correction rather than six months."

these cases is that a defendant who gives drugs to others "distributes" those drugs whenever the defendant serves as "a link in the chain" between supplier and consumer. See *Commonwealth* v. *Fluellen, supra* at 525.

We have not addressed whether, by sharing a marijuana cigarette that was not jointly acquired by the person sharing it, a person acts as a link in the drug distribution chain, i.e., "facilitates a transfer of drugs from a seller to a buyer." *Id.* at 524-525. Thus, even before the enactment of G. L. c. 94C, § 32L, we had not determined whether the social sharing of marijuana violated the distribution statute.[4] Such an interpretation would not have served the distribution statute's original purpose, which was to target those "in the drug business." 1980 House Doc. No. 6652, at 1. As the Governor explained to the Legislature when proposing the 1980 legislation that added the distribution statute to the General Laws, "The time has come to launch a new, more aggressive campaign against *those who operate and profit* from the death-dealing traffic in drugs. . . . We need major changes in the way our criminal system deals with *these dealers in drugs*." (Emphasis added.) *Id.*

We now decide that the social sharing of marijuana is akin to simple possession, and does not constitute the facilitation of a drug transfer from seller to buyer that remains the hallmark of drug distribution. Cf. *Garcia-Echaverria* v. *United States*, 376 F.3d 507, 514 n.5 (6th Cir. 2004) ("casual sharing of marijuana" in social setting "is akin to mere possession rather than

---

[4]Prior to the enactment of G. L. c. 94C, § 32L, a decision of the Appeals Court assumed that sharing marijuana with friends would constitute a violation of the distribution statute, G. L. c. 94C, § 32 (*a*). See *Commonwealth* v. *Lawrence*, 69 Mass. App. Ct. 596, 602-603 (2007). The Appeals Court determined that a defendant's prior sharing of marijuana with friends indicated that he had been predisposed to distribute marijuana, such that his later sale of marijuana to an undercover police officer could not be considered entrapment. The court relied on an expansive definition of the term "distribute" found in an annotation to the definition of "distribute." See *id.*, quoting Black's Law Dictionary 475 (6th ed. 1990) ("In criminal law, a person 'distributes' a dangerous drug when he sells, transfers, gives or delivers to another, or leaves, barters or exchanges with another, or offers or agrees to do the same"). That annotation refers to a Hawaii case, *State* v. *Schofill*, 63 Haw. 77, 81 (1980), which determined that an offer to sell drugs constitutes the crime of distributing drugs under Hawaii law. The Massachusetts statute defines distribution more narrowly.

distribution'').[5] We therefore conclude that the social sharing of marijuana does not violate the distribution statute.

Our conclusion is informed by the clear policy goals served by the passage of G. L. c. 94C, § 32L: to reduce the direct and collateral consequences of possessing small amounts of marijuana, to direct law enforcement's attention to serious crime, and to save taxpayer resources previously devoted to targeting the simple possession of marijuana. See Information for Voters: 2008 Ballot Questions, Question 2: Law Proposed by Initiative Petition, Possession of Marijuana.[6] Significantly, ''the entire statutory scheme . . . implicates police conduct in the field. Ferreting out decriminalized conduct with the same fervor associated with the pursuit of serious criminal conduct is neither desired by the public nor in accord with the plain language of the statute.'' *Cruz, supra* at 472.

As a result of the enactment of G. L. c. 94C, § 32L, the observation by police that an individual possesses a small amount of marijuana does not justify a warrantless search. See *Cruz, supra.* Likewise, we conclude that the observation by police of several individuals using and sharing marijuana in a social setting does not provide the police with justification to conduct a warrantless search. We do not read G. L. c. 94C, § 32L, so narrowly as to protect only the solitary marijuana user from warrantless searches, particularly in light of the recognition that marijuana is often used in groups. See, e.g., *Larocca v. State,* 164 Md. App. 460, 479 (2005) (''it is common knowledge that

---

[5] We note that, although possession of marijuana remains a crime under Federal law, Federal law treats the social sharing of marijuana as possession, not as distribution. See 21 U.S.C. § 841(b)(4) (2006) (''any person who violates subsection [a] of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in [statute dealing with simple possession]''). See also *United States v. Eddy,* 523 F.3d 1268, 1271 (10th Cir. 2008) (''the social sharing of marijuana among friends[] is punished in a manner similar to simple possession . . . suggesting that this activity is akin to simple possession and not a lesser degree of distribution''); *United States v. Outen,* 286 F.3d 622, 637 (2d Cir. 2002) (''sharing of small amounts of marijuana in social situations'' is ''of a different type more akin to simple possession than to provisions intended to cover traffickers'').

[6] ''We assume that before casting their votes, voters read the arguments 'for' and 'against,' as well as the new law itself.'' *Commonwealth v. Cruz,* 459 Mass. 459, 471 (2011).

people use marijuana by sharing a single cigarette and inhaling the smoke from the cigarette and the ambient smoke"). To do so would undermine the clear intent of the voters to alter police conduct toward marijuana users. See 2B N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 56:1, at 486-488 (7th ed. rev. 2012) ("courts reject a narrow construction that will undermine the public policy sought to be served").

Because Officers Byrne and Mahoney did not have probable cause to arrest the defendant when they observed him sharing a marijuana cigarette with two others, the subsequent search of the defendant's person and backpack was not justified as a search incident to a lawful arrest.

b. *Probable cause to discover a criminal amount of marijuana.* The Commonwealth claims that the officers' observation of the defendant with a marijuana cigarette gave them probable cause to believe the defendant possessed more than one ounce of marijuana.[7] This argument was rejected by our decision in *Commonwealth* v. *Daniel, ante* 746, 751-752 (2013), in which we held that possession of a decriminalized amount of marijuana does not create probable cause to believe that a criminal amount of marijuana is present. Thus, the search of the defendant's person was unlawful. Because Mahoney's observation that the defendant's backpack smelled like marijuana was made during the course of that illegal search, it cannot be used to justify his search of the defendant's backpack even assuming, without deciding, that the smell of marijuana was sufficient to support probable cause to believe that there was a criminal amount of marijuana inside the backpack. See, e.g., *Commonwealth* v. *Blevines*, 438 Mass. 604, 611 (2003).

3. *Conclusion.* The defendant's motion to suppress should have been allowed. The order denying the motion to suppress is

---

[7] We need not decide whether the officers lawfully seized the plastic bag protruding from the defendant's pocket. Because the amount of marijuana in the plastic bag was small (much less than one ounce, given that the total amount of marijuana found on the defendant's person and in his backpack was less than one ounce) and would have subjected the defendant only to a civil penalty, it also did not provide a basis to search the defendant further. See *Commonwealth* v. *Daniel, ante* 746, 751-752 (2013). Thus, the legality of that seizure has no bearing on our holding that the subsequent search of the defendant's person and backpack was unlawful.

reversed. The case is remanded to the Central Division of the Boston Municipal Court Department for further proceedings consistent with this opinion.

*So ordered.*