## COMMONWEALTH vs. YVES C. FONTAINE.

No. 12-P-1113.

Suffolk. April 2, 2013. - January 21, 2014.

Present: VUONO, CARHART, & AGNES, JJ.

*Controlled Substances. Practice, Criminal,* Motion to suppress, Warrant, Affidavit. *Search and Seizure,* Warrant, Affidavit, Probable cause, Motor vehicle, Inevitable discovery. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Motor Vehicle.*

Statement of the standard of review applicable to a decision whether probable cause exists to issue a search warrant. [703-704]
A Boston Municipal Court judge erred in allowing a criminal defendant's pretrial motion to suppress a firearm and ammunition seized from his motor vehicle following a search conducted pursuant to a warrant, where the affidavit submitted by a police officer in support of the warrant application established probable cause to believe that a criminal quantity of marijuana was hidden in the vehicle, based on the combination of an overwhelming odor of unburnt marijuana and the additional facts known by the officer (i.e., the absence of any implements for smoking marijuana, three sizable bundles of currency, excess wiring under the dashboard and throughout the passenger compartment consistent with hidden compartments, the manner in which marijuana found in a small bag in the console was packaged, the inconsistency between the strength of the odor and the amount in the small bag, and the fact that the two occupants had prior criminal convictions of drug offenses) [704-707]; where the affidavit provided both a substantial basis to conclude that the affiant was qualified to detect the odor of unburnt marijuana [707-708] and a substantial basis for crediting the affiant's suspicion that the vehicle contained a hidden electronic compartment [708-709]; and where, although the affidavit did not support a search for firearms or ammunition, their inclusion in the description of items to be seized was not reckless or in bad faith, and it was certain as a practical matter that the firearm and ammunition would have been discovered during the properly authorized search for marijuana [709-710].

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on December 14, 2010.

Following transfer to the Central Division of the Boston

Municipal Court Department, a pretrial motion to suppress evidence was heard by *Sally A. Kelly*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Francis X. Spina*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Cailin M. Campbell*, Assistant District Attorney, for the Commonwealth.

*Dana Alan Curhan* (*Joshua D. Werner* with him) for the defendant.

AGNES, J. This is an interlocutory appeal by the Commonwealth from the allowance of the defendant's motion to suppress a firearm and ammunition seized by officers of the Boston police department from a motor vehicle pursuant to a search warrant. The motion judge concluded that the affidavit submitted in support of the warrant failed to establish probable cause. For the reasons that follow, we reverse.

*Background.* The warrant in question was issued on the basis of an affidavit prepared by Boston police Detective James R. Sheehan. It informed the magistrate of the following facts.[1] On December 9, 2010, at approximately 8:30 P.M., two officers of the Boston police department stopped the defendant's vehicle after observing several traffic violations in the vicinity of Blue Hill Avenue and Wellington Hill Street in the Mattapan section of Boston. The defendant was driving the vehicle and Jason Bly was sitting in the front passenger seat. As the officers approached the vehicle, they saw the defendant lean towards the passenger-side dashboard and return to an upright position. The defendant denied making this movement when the officers questioned him about it. Upon approaching the vehicle, the driver- and passenger-side windows of the car were open. The officers noticed an "overwhelming scent" of unburnt marijuana that was "pervasive" throughout the interior of the vehicle. The officers observed a small plastic bag in the center console, which contained a

---

[1] The motion judge filed a comprehensive written decision containing findings of fact and rulings of law. In a case such as this, however, our responsibility is to determine whether the statements within the four corners of the officer's affidavit establish probable cause independent of any findings and rulings by the judge. See *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003).

green vegetable substance the officers believed was marijuana. The packaging of this material was "consistent with narcotics packaged for distribution." The officers removed both the defendant and passenger, Bly, from the vehicle.

Within a short time, several more members of the Boston police department, including the affiant Detective Sheehan, and a State police trooper arrived on the scene. It is significant that Detective Sheehan smelled the strong odor of marijuana still coming from inside the vehicle at this time even though the windows had been open. Based upon the officers' initial observations and the strong odor of unburnt marijuana, one of the officers conducted a search of the vehicle's front passenger compartment.[2] During this search, the officer recovered three separate bundles of United States currency, totaling $2,300 (in bundles of $1,000, $300, and $1,000) and wrapped in rubber bands in a manner the affiant knew to be consistent with the way that proceeds of drug transactions commonly were wrapped.

In his affidavit, Detective Sheehan informed the magistrate that he knew the passenger, Bly, had prior criminal convictions involving drugs, firearms, and violence. He also stated that he checked with the Massachusetts criminal history systems board and learned that both the defendant and Bly had prior convictions of possession of a controlled substance and possession of a controlled substance with intent to distribute. Detective Sheehan's affidavit also informed the magistrate that the investigating officers did not believe that either the defendant or Bly was under the influence of narcotics. The officers observed an absence of paraphernalia within the vehicle that could be used to ingest drugs. The affiant stated that, based upon his as well as the other officers' training and experience, the drugs and currency were packaged in a manner consistent with drug distribution. Detective Sheehan also reported that the officers also found "numerous loose components and what appeared to be excess wiring throughout the dashboard and front passenger compart-

---

[2]Neither the exit order nor the search of the passenger compartment are at issue in this appeal. Neither the defendant nor the passenger was arrested at the scene. The car was impounded and towed, and those actions also are not challenged in this appeal. The car was not subjected to an inventory search; instead, the police proceeded on the basis of a criminal investigation and obtained the warrant that is the subject of this appeal.

ment consistent with electronic hidden compartments, hereinafter referred to as 'hides.' " A canine officer also responded with a ballistics dog; however, the dog did not alert to the presence of contraband within the vehicle.[3]

The affidavit also states that Detective Sheehan is a nine-year veteran of the Boston police department, with training and experience in processing crime scenes, collecting physical evidence, and writing and executing search warrants. Detective Sheehan informed the magistrate his assignments had included anti-crime patrols, the "Youth Violence Strike Force," and the "Special Investigation Unit, Major Cases Division." These assignments included the investigation of cases involving drug distribution and firearms. In addition to his police academy training, the affiant stated that he had specialized training from the United States Drug Enforcement Administration and had taken its narcotics investigation course. He also informed the magistrate that based on their training and experience, he and his fellow officers know that those involved in the illegal distribution of drugs use secret hides inside vehicles to prevent the police from discovering narcotics, money, and weapons during a search of the vehicle.[4] Detective Sheehan's affidavit also states that he and the other officers believed that the overwhelming smell of unburnt marijuana indicated that there was a quantity

---

[3]The affidavit also states that Sergeant Detective William Feeney of the drug control unit was contacted. The affidavit sets forth in several paragraphs Sergeant Detective Feeney's specialized training in drug investigations and the expertise he has developed in the detection of electronic hides in vehicles. However, the affidavit does not indicate, and we do not assume, that Sergeant Detective Feeney examined the vehicle or provided any assistance to the investigating officers prior to the submission of the warrant application. For the reasons we state in part 2.c, *infra,* the affidavit's failure to link Sergeant Detective Feeney to the probable cause determination is of no consequence in light of the sufficiency of the remainder of the affidavit.

[4]Detective Sheehan's affidavit adds the following:

"These 'hides' are both simple and sophisticated, with simple 'hides' being the natural voids in vehicles and sophisticated 'hides' utilizing hydraulic arms and electronic relays. The most sophisticated 'hides' are often undetectable to the naked eye, often utilizing a series of electronic relays and hydraulic pistons. These 'hides' make it difficult for law enforcement to locate illegal narcotics or other contraband contained within, without the assistance of an expert who is familiar with operation and mechanics of electronic 'hides.' "

Commonwealth *v.* Fontaine.

of drugs in the vehicle larger than what was found in plain view.

Based upon these facts, Detective Sheehan applied for a warrant to search the vehicle in question for "[f]irearms," "live ammunition," "[m]arijuana and/or any controlled substance[s]," "paraphernalia used in the cutting, weighing, bagging and possession and/or distribution" of controlled substances, and "monies, books, ledgers, personal papers, cellular phones or other electronic devices denoting the sale of said controlled substance[s]." Based on this application, he obtained a search warrant for the defendant's vehicle as requested from the clerk-magistrate.[5] Officers of the Boston police department executed the search warrant on December 10, 2010, and found, inside a hidden compartment within the vehicle, a firearm along with a magazine loaded with fifteen rounds of ammunition. A complaint issued, charging the defendant with firearm and ammunition possession offenses, but not with drug offenses. On the defendant's motion, a judge ordered the suppression of the firearm and ammunition, and we now consider the Commonwealth's interlocutory appeal from that order.[6]

*Discussion.* 1. *Standard of review.* When determining whether probable cause exists to issue a warrant, we consider the statements contained within the "four corners of the affidavit." *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). We read the affidavit as a whole, and refrain from dividing it into separate parts to be considered in isolation from

---

[5]The search warrant, which was issued on December 10, 2010, authorized the officers to search the defendant's vehicle for

> "[f]irearms as a whole or disassembled, live ammunition, spent shell casings and holsters for carrying or concealing of such weapons. Marijuana and/or any controlled substance as defined by Massachusetts General Laws, Chapter 94C. All paraphernalia used in the cutting, weighing, bagging and possession and/or distribution of said controlled substance. All monies, books, ledgers, personal papers, cellular phones or other electronic devices denoting the sale of said controlled substance."

[6]According to the warrant return, police also seized a cellular telephone and a plastic bag of marijuana during the warrant's execution. Whether or not the defendant's motion sought suppression of these items and was denied, he did not cross-appeal and raises no argument as to the items, and we do not further discuss them.

each other. *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992). Our reading of an affidavit is guided by common sense. *Commonwealth* v. *Thevenin*, 82 Mass. App. Ct. 822, 825 (2012). Mindful that the police are dealing with probabilities based on "the factual and practical considerations of everyday life," the question is whether reasonable and prudent people would act on the basis of the information gathered by the police, not whether the information would satisfy legal technicians. *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949). See *Commonwealth* v. *Cast*, 407 Mass. 891, 895-896 (1990). In reviewing affidavits in support of search warrants, we allow "considerable latitude" for the drawing of inferences. *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). We have a responsibility, as a reviewing court, no less than the motion judge, to give "considerable deference to the magistrate's determination of probable cause." *Commonwealth* v. *Walker*, 438 Mass. 246, 249 (2002). See *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965) ("A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting"). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Commonwealth* v. *Monterosso*, 33 Mass. App. Ct. 765, 770 (1992), quoting from *United States* v. *Ventresca*, 380 U.S. at 109.

2. *Probable cause.* Probable cause to search exists when the facts stated by the affiant and the reasonable inferences that may be drawn from them provide a substantial basis for the issuing magistrate to conclude that the items to be seized are related to the criminal activity under investigation, and that it is reasonable to expect they will be found in the place to be searched at the time the warrant issues. *Commonwealth* v. *Walker*, 438 Mass. at 249. See *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213 (1983); *Commonwealth* v. *Donahue*, 430 Mass. 710, 712 (2000). The defendant's argument reduces to this: the police having searched the passenger compartment after ordering the occupants out of the vehicle, the presence of a small quantity of marijuana in the center console, coupled with the "overwhelming odor" of unburnt marijuana coming from the vehicle, along

with the other facts, does not add up to probable cause to believe that an additional amount of marijuana, drug paraphernalia, or a firearm would be located somewhere else in the vehicle, e.g., in a hidden compartment. As we discuss below, this argument overlooks several important considerations.

a. *Sufficiency of the evidence to establish criminal activity.* Under the Massachusetts marijuana decriminalization law, G. L. c. 94C, §§ 32L-32N, which took effect on December 4, 2008, possession of one ounce or less of marijuana is a civil, but not a criminal, violation. See *Commonwealth* v. *Cruz,* 459 Mass. 459, 464, 472 (2011). In particular, an odor of burnt marijuana no longer constitutes reasonable suspicion of criminal activity or probable cause without some additional fact or facts that establish a reasonable basis for the belief that more than one ounce of marijuana is in a person's possession or in the location from which the odor emanates. See *id.* at 472. See also *id.* at 475-476 (explaining that although possession of any amount of marijuana remains unlawful, probable cause to believe person has possession of noncriminal amount, standing alone, does not justify search of person or area under his control); *Commonwealth* v. *Lobo,* 82 Mass. App. Ct. 803, 808 (2012) (police officer's detection of odor of "freshly burnt marijuana" following vehicle stop did not justify exit order in absence of other evidence of criminal activity). Likewise, possession of a small quantity of marijuana (one ounce or less), standing alone, will not support the search of a person, a backpack, or a vehicle for an additional quantity of marijuana or other evidence of criminal activity. See *Commonwealth* v. *Daniel,* 464 Mass. 746, 751-752 (2013) (search of vehicle was not permitted simply because operator produced two small bags of marijuana from her pocket); *Commonwealth* v. *Jackson,* 464 Mass. 758, 765-766 (2013) (observation of person with marijuana cigarette does not create probable cause to believe person has possession of more than one ounce of marijuana); *Commonwealth* v. *Pacheco,* 464 Mass. 768, 772 (2013) (trooper's detection of "strong odor of freshly burnt marijuana," statements by vehicle's occupants that they were smoking marijuana in car, and discovery in vehicle of small bag containing partial ounce of marijuana did not supply

probable cause to search vehicle's trunk for evidence of distribution of marijuana).[7]

Where these cases explain how the Massachusetts marijuana decriminalization law "implicates police conduct in the field," *Commonwealth* v. *Cruz*, 459 Mass. at 472, it is reasonable to conclude that an odor of unburnt marijuana, like an odor of burnt marijuana, standing alone, does not provide reasonable suspicion of criminal activity that would authorize the police to detain a person or issue an exit order, or probable cause to conduct a search.[8] However, when an experienced police officer detects an "overwhelming" odor of unburnt marijuana that is "pervasive" throughout the entire vehicle, and the officer reasonably believes it is inconsistent with the small quantity of marijuana that is visible in the vehicle, the officer has specific and articulable facts that support a reasonable suspicion that a crime is being committed, namely possession of more than one ounce of marijuana.[9] Here, the combination of the "overwhelming" odor of unburnt marijuana and the additional facts known by the officer, namely, the absence of any implements for smoking marijuana, the three sizable bundles of United States currency, the excess wiring under the dashboard and throughout the passenger compartment consistent with hides, the manner in which the marijuana in the small bag in the console was packaged, the

---

[7]In *Commonwealth* v. *Keefner*, 461 Mass. 507, 512-515 (2012), the Supreme Judicial Court explained that the marijuana decriminalization law did not repeal the offense of possession of marijuana with the intent to distribute, whether the amount involved is more or less than one ounce. In *Commonwealth* v. *Jackson*, 464 Mass. at 764, the court further explained that although the term "distribution" includes more than the act of selling, "the social sharing of marijuana is akin to simple possession, and does not constitute the facilitation of a drug transfer from seller to buyer that remains the hallmark of drug distribution," and is not a crime.

[8]*Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. 591, 596 n.8 (1996), and *Commonwealth* v. *Villatoro*, 76 Mass. App. Ct. 645, 647 & n.3 (2010), in which the detection of an odor of marijuana coming from a vehicle provided probable cause to search the vehicle, were decided prior to *Commonwealth* v. *Cruz*, 459 Mass. 459 (2011), and involved events occurring prior to the effective date of the marijuana decriminalization law.

[9]The decriminalization law does not limit a police officer's right to question the operator of or passengers in a motor vehicle that has been stopped for any valid reason whether anyone has smoked marijuana in order to determine whether to issue a civil citation in accordance with G. L. c. 40, § 21D.

.

inconsistency between the strength of the odor and the amount in the small bag, and the fact that the two occupants had prior criminal convictions of drug offenses, was sufficient to establish probable cause to believe a criminal quantity of marijuana was hidden in the vehicle. It is therefore unnecessary for us to decide whether the "overwhelming" odor of unburnt marijuana alone provided probable cause to support the issuance of the search warrant.

b. *Basis for Detective Sheehan's statement that he smelled the odor of unburnt marijuana.* The defendant contends that because there is no express statement in the affidavit that Detective Sheehan had training and experience in detecting the odor of marijuana, the magistrate could not have credited his opinion that he smelled an "overwhelming scent" of unburnt marijuana. In a number of prior cases, our courts have stated that an officer with proper training and experience can rely on the odor of marijuana to opine that it is present on someone's person or in a vehicle. See, e.g., *Commonwealth* v. *Garden*, 451 Mass. 43, 47-48 (2008); *Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. 591, 596 n.8 (1996); *Commonwealth* v. *Correia*, 66 Mass. App. Ct. 174, 177 (2006); *Commonwealth* v. *Villatoro*, 76 Mass. App. Ct. 645, 647 n.3 (2010).[10] The defendant does not cite a case, however, that holds that before a magistrate may credit an affiant's report that he detected an odor of unburnt marijuana there must be an express statement in the officer's affidavit as to his qualifications to detect the smell of marijuana. Probable cause does not require evidence that meets the foundation requirements governing proof of facts at a trial. See *United States* v. *Ventresca*, 380 U.S. at 107-108. In his affidavit in this case, Detective Sheehan informed the magistrate that over his nine-year career, he had investigated drug distribution cases and prepared affidavits for search warrants. He also stated that he had processed crime scenes and collected physical evidence. In addition to his police academy training, the affiant further stated

---

[10]Evidence of a forbidden substance's distinctive odor and of that odor's detection by a qualified officer has been described as "evidence of most persuasive character" and sufficient, by itself, to constitute probable cause to believe that the substance is present. *Johnson* v. *United States*, 333 U.S. 10, 13 (1948). See generally 2 LaFave, Search and Seizure § 3.6(b) (5th ed. 2012 & Supp. 2013-2014).

that he had specialized training from the Drug Enforcement Administration and had taken its narcotics investigation course. In the assessment of the sufficiency of an affidavit to establish probable cause, the magistrate is entitled to weigh the specialized knowledge, training, and experience of the investigating officers. See *Commonwealth* v. *Kennedy*, 426 Mass. 703, 704-705 (1998). See also Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 10-5[b][1] (2012-2013 ed.) (collecting cases). The most commonsense interpretation of these statements by Detective Sheehan is that he is familiar with the odor of marijuana. See *United States* v. *Pringle*, 53 Fed. Appx. 65, 69 (10th Cir. 2002); *State* v. *Watts*, 801 N.W.2d 845, 855 (Iowa 2011); *State* v. *Olson*, 74 Wash. App. 126, 130-131 (1994). While the better practice is for the officer to state in the affidavit precisely how and why the officer is qualified to detect the odor of marijuana, the statements made by Detective Sheehan provided the magistrate with a substantial basis to conclude that the affiant was qualified to detect the odor of unburnt marijuana. See *State* v. *Watts, supra*.

c. *Basis for Detective Sheehan's statement that he suspected the existence of a hide.* The defendant argues that the affidavit contains a fatal omission in that there are three paragraphs that detail the experience and expertise of Sergeant Detective William Feeney in detecting and searching for hidden compartments or "hides" in automobiles, but Sergeant Detective Feeney does not appear to have played any role in the investigation of the case. See note 3, *supra.* The affidavit does not state that he shared his expertise with Detective Sheehan. As a result, the defendant claims that Detective Sheehan's statements about the existence of a hide are based on no more than a hunch and cannot be considered in the assessment of probable cause. Although mere conclusory statements in an affidavit in support of a search warrant do not provide a magistrate with a substantial basis to believe that criminal activity is involved, see Grasso & McEvoy, *supra* at § 10-4[d], Detective Sheehan's statements in this case were sufficiently detailed to assure the magistrate that he had specialized knowledge about hides, independent of the expertise of Sergeant Detective Feeney, and that there was a factual basis for Detective Sheehan's suspicion. As noted earlier,

Detective Sheehan stated in his affidavit that he and his fellow officers were aware that drug dealers used secret hides in vehicles to prevent the police from discovering narcotics, money, and weapons, and he described both simple and sophisticated types of hides, the latter utilizing hydraulic arms and electronic relays. He further explained that sophisticated hides were often difficult to detect. When these statements are considered along with Detective Sheehan's observation of "excess wiring throughout the dashboard and front passenger compartment," the magistrate had a substantial basis for crediting the affiant's suspicion that the vehicle contained a hidden electronic compartment or hide that concealed marijuana.

Reading the affidavit as a whole and drawing all rational inferences from the facts stated, Detective Sheehan's affidavit established probable cause to believe that additional marijuana would be found in a hidden compartment inside the vehicle. The affidavit did not, however, establish probable cause to believe that a firearm would be located in the vehicle. See *Commonwealth* v. *Washington*, 449 Mass. 476, 482-483 (2007) (although cases have noted a connection between drugs and guns, there is no presumption for constitutional purposes that guns are present simply because persons are suspected of drug distribution activities). See also *Commonwealth* v. *Cabrera*, 76 Mass. App. Ct. 341, 348 (2010). This does not mean that the firearm and ammunition seized by the police must be suppressed.

3. *Inevitable discovery.* "Under the inevitable discovery doctrine, if the Commonwealth can demonstrate by a preponderance standard that discovery of the evidence by lawful means was certain as a practical matter, the evidence may be admissible as long as the officers did not act in bad faith to accelerate the discovery of evidence, and the particular constitutional violation is not so severe as to require suppression." *Commonwealth* v. *Sbordone*, 424 Mass. 802, 810 (1997). Here, the police acted properly in applying for a search warrant for the defendant's vehicle, and the affidavit supplied the magistrate with probable cause to believe that in excess of one ounce of marijuana would be found in the vehicle. Although the affidavit did not support a search for firearms or ammunition, including such items in the description of the things to be seized was not

reckless or an act taken in bad faith in view of "the common nexus between guns and drugs." *Commonwealth* v. *Reveron*, 75 Mass. App. Ct. 354, 358 (2009). Compare *United States* v. *Calisto*, 838 F.2d 711, 716 (3d Cir. 1988) ("It is well established that firearms may be considered items used in connection with controlled substances"). If the police had not included these items in their application for a search warrant, it was "certain as a practical matter" that such evidence would have been discovered during the properly authorized search for marijuana. See *Commonwealth* v. *McAfee*, 63 Mass. App. Ct. 467, 480 (2005). See also *Commonwealth* v. *Streeter*, 71 Mass. App. Ct. 430, 441 (2008).[11] In these circumstances, "regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings." *Commonwealth* v. *Starkweather*, 79 Mass. App. Ct. 791, 798 (2011), quoting from *Nix* v. *Williams*, 467 U.S. 431, 447 (1984).

*Conclusion.* For the above reasons, the order allowing the defendant's pretrial motion to suppress is reversed.

*So ordered.*

---

[11]Put alternatively, the warrant having properly authorized the search for drugs in the same location where the firearm and ammunition were discovered, upon finding the hidden compartment the executing officers were lawfully in a position to observe and seize the firearm and ammunition in plain view there. See *Commonwealth* v. *Balicki*, 436 Mass. 1, 8 (2002). Because probable cause to include firearms and ammunition in the warrant application was lacking, the inadvertence aspect of the plain view exception to the warrant requirement was satisfied. See *id.* at 8-9.