COMMONWEALTH *vs.* MAXIME N. THEVENIN.

No. 11-P-1354.

Suffolk. September 13, 2012. - November 27, 2012.

Present: GRASSO, KANTROWITZ, & GRAHAM, JJ.

*Firearms. Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Probable cause, Affidavit. *Probable Cause.*

A Boston Municipal Court judge erred in granting the criminal defendant's pretrial motion to suppress ammunition seized from his room pursuant to a warrant to search the residence in which the room was located, where the affidavit accompanying the application for the warrant, taken as a whole, clearly established a link between the defendant, who lived at the residence, and the crime in question, and established probable cause to believe that evidence of the crime would be found at the residence. [825-828]

COMPLAINT filed in the Dorchester Division of the Boston Municipal Court Department on August 3, 2010.

A pretrial motion to suppress evidence was heard by *Franco J. Gobourne, II,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ralph D. Gants,* J., in the Supreme Judicial Court for the county of Suffolk, and the case was reported by him to the Appeals Court.

*Joseph M. Ditkoff,* Assistant District Attorney, for the Commonwealth.

*Krista M. Larsen* for the defendant.

GRAHAM, J. On July 21, 2010, Boston police executed a search warrant for the residence in which the defendant, Maxime N. Thevenin, was living. Among the items seized from the residence pursuant to the search warrant was a .22 caliber bullet found on the floor of the defendant's room. As a result, the defendant was charged with one count of possession of ammunition without a firearm identification card in violation of G. L. c. 269, § 10(*h*)(1).

Following his arrest and arraignment on the charge, the defendant filed a motion to suppress evidence seized from his room pursuant to the search warrant.[1] A Boston Municipal Court judge concluded that the affidavit submitted in support of the search warrant application did not furnish probable cause to search the room, and suppressed the evidence obtained from the room. A single justice of the Supreme Judicial Court granted the Commonwealth's application for leave to prosecute an interlocutory appeal of the suppression order. We reverse the order.

Our inquiry as to the sufficiency of a search warrant application begins and ends with the "four corners of the affidavit." *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). On July 21, 2010, Boston police Detective Windell C. Josey applied for a search warrant and submitted an affidavit, which we summarize as follows. On July 17, 2010, Alicia Link and Jasimine Curry were visiting Ebonee Thevenin (Ebonee) at 3 Oakhurst Street in the Dorchester section of Boston. John Collins was also at the residence. Collins, Ebonee, and the defendant, who are siblings, all live at 3 Oakhurst Street.

At some point, Link went to the store to buy some snacks, while Curry dozed on the porch. After Link returned with the snacks, an issue arose between her and Collins regarding the snacks. While on the porch, Collins grabbed Link by the hair and began to shake her head. An argument between the two ensued, causing Curry to awaken. Collins then reached into his front right-side pants pocket, pulled out a gun, and slammed it on the porch bannister. Collins then began to "charge" at Link. At that point, Ebonee grabbed Collins and directed Link to leave the residence.

As Link and Curry drove from the residence in Link's car, they heard three gunshots. Curry immediately noticed a hole in the front passenger door of the vehicle, which was later observed and photographed by Detective Josey. The Boston "shot spotter" system alerted the Boston police to the shooting on Oakhurst

---

[1]In this motion, the defendant also requested that statements he made to the police be suppressed. The judge denied that portion of the motion.

Street. Officers dispatched to the scene discovered three spent shell casings in the street near 4 Oakhurst Street.

On July 19, 2010, Link and Curry reported the incident to the Boston police, and each identified Collins from a photographic array. The police later confirmed that Collins lived at 3 Oakhurst Street and determined that he did not have a firearms identification card or a license to carry firearms. Also on July 19, 2010, Boston police officers on patrol discovered an abandoned firearm in an alleyway adjacent to 15 Boyden Street, approximately 100 yards from 3 Oakhurst Street. On July 21, 2010, Detective Josey obtained an arrest warrant for Collins, charging him with two counts of assault by means of a dangerous weapon, wilful and malicious destruction of property, unlawful possession of a firearm, and discharge of a firearm near a dwelling.

On July 21, 2010, Boston police Sergeant Detective John Ford, Detective Josey, and several officers attempted to execute the arrest warrant for Collins at 3 Oakhurst Street, but did not find him there. At the residence, Annie Dowell advised Detective Josey that she was the owner of the residence and that Collins, her grandson, lived there. In addition, the defendant spoke to Sergeant Detective Ford and informed him that Collins "has not been here for two days since you guys found the gun."

The police officers "froze[]" the residence and informed Dowell that they would seek a warrant permitting them to search the residence.[2] The defendant asked Sergeant Detective Ford, "What if you find ammo?" and Ford responded, "If ammo is found in John Collins['s] room, 'he owns it.' " The defendant then asked, "What if ammo is found in my room?" Sergeant Detective Ford replied, "Then you own it."

Based on the information in the affidavit, a warrant issued on July 21, 2010, to search 3 Oakhurst Street for:

> "firearms, live cartridge(s), spent shell casing(s) and bullets projectile(s) and/or fragment(s) of ammunition, and/or other firearm related items such as cleaning kit(s), bore

---

[2]At the time that Detective Josey applied for the search warrant, the Boston police had not determined whether the firearm found in the alleyway adjacent to 15 Boyden Street was the one used in the shooting.

brushed, holster(s), ammunition magazine(s) and literature, photo documentation, personal identification in the name of John Raymond Collins, a black with green colored shirt, blue colored jeans."

Boston police executed the warrant that day and seized photographic evidence, personal papers in the name of John Collins, a "sawed off" .22 caliber rifle, a clear plastic bag containing fourteen .22 caliber cartridge bullets, two .25 caliber cartridge bullets, and one .22 caliber cartridge bullet. The single .22 caliber bullet was found on the floor of the defendant's room.

*Discussion.* Under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, search warrants may issue only upon probable cause. Moreover, probable cause to believe a person is guilty of a given crime does not, without more, create probable cause to search. See *Commonwealth* v. *Jean-Charles*, 398 Mass. 752, 757 (1986). An affidavit in support of a search warrant must contain sufficient information for an issuing magistrate to determine that "the items sought are related to the criminal activity under investigation, and that [the items] reasonably may be expected to be located in the place to be searched at the time the search warrant issues." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). The nexus between the items sought and the place to be searched need not be based on direct observation, but may be based on the "type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [evidence of the crime]." *Ibid.*, quoting from *United States* v. *Lucarz*, 430 F.2d 1051, 1057 (9th Cir. 1970).

We give considerable deference to the magistrate's determination, *Commonwealth* v. *Walker*, 438 Mass. 246, 249 (2002), and the "resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *Commonwealth* v. *Germain*, 396 Mass. 413, 418 (1985), quoting from *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965). In addition, search warrant affidavits should be interpreted "in a commonsense and realistic fashion," *Commonwealth* v. *Donahue*,

430 Mass. 710, 712 (2000), quoting from *United States* v. *Ventresca, supra* at 108, and "read as a whole, not parsed, severed, and subjected to hypercritical analysis." *Commonwealth* v. *Donahue, supra,* quoting from *Commonwealth* v. *Blake,* 413 Mass. 823, 827 (1992). Finally, "[a]ll reasonable inferences which may be drawn from the information in the affidavit may also be considered as to whether probable cause has been established." *Commonwealth* v. *Donahue, supra.*

The defendant argues, and the motion judge agreed, that the affidavit fails to meet the second part of the probable cause test, in that it does not establish that the items identified would probably be found in the residence at 3 Oakhurst Street in Dorchester. More specifically, he argues that, although Collins lived at the residence and eyewitnesses alleged that he fired shots from the porch of that residence, there was no indication that he kept the weapon or the ammunition in that residence. In addition, the defendant notes that the officers had gone to the residence four days after the incident seeking, unsuccessfully, to execute an arrest warrant for Collins, and had been informed that Collins had not been there for two days following the discovery of a handgun approximately 100 yards from the residence.

The defendant misapprehends the notion of probable cause. The nexus between the items to be seized and the place to be search need not establish to a certainty that the items to be seized will be found in the location specified in the warrant, nor exclude any and all possibility that the items might be found elsewhere. Rather, the test is probable cause, not certainty. "The affidavit need not convince the magistrate beyond a reasonable doubt, but must provide a substantial basis for concluding that evidence connected to the crime will be found on the specified premises." *Commonwealth* v. *Donahue, supra.*

Here, the search warrant for the residence primarily covered firearms and ammunition. The supporting affidavit stated in particular that Collins had displayed a gun while on the porch of the residence, and that immediately thereafter when Link and Curry left, shots were fired at their vehicle. Therefore, the affidavit clearly established a link between Collins, who lived in the residence, and the crime, and established probable cause to believe that evidence of the crime would be found at the residence.

The items listed in the search warrant, namely firearms, ammunition, and firearm-related items, such as cleaning kits, holsters, brushes, and ammunition magazines, are all reasonably related to the investigation and constitute evidence of the criminal activity. It is reasonable that Collins would seek to hide some, if not all of the items, at his residence, particularly those items that were "durable, [and] of continuing utility to [him]." *Commonwealth* v. *James*, 424 Mass. 770, 778 (1997). Moreover, with the exception of the firearm, it is likely that such items would be found in Collins's residence, as opposed to being disposed of, especially because they are not inherently incriminating. See *Commonwealth* v. *Cinelli, supra* at 213 (finding probable cause to search for ammunition); *Commonwealth* v. *Burt*, 393 Mass. 703, 715-716 (1985) (same for coins, tools, clothing, keys, and bank books); *Commonwealth* v. *James, supra* (same for knives, sneakers, dark clothing, and face masks); *Commonwealth* v. *Wilson*, 427 Mass. 336, 343 (1998) (same for ammunition and rubber surgical gloves). This was sufficient to allow the magistrate to draw a reasonable inference that the items sought under the warrant could be in Collins's residence.

Finally, the defendant argues that it is not reasonable to believe that evidence of the crime would be present at the residence because of the discovery by police of a handgun near the residence and the statements of the defendant informing the police that Collins had not been at the residence for two days following the discovery of the handgun. Stated differently, the defendant claims that the lapse of time between the discovery of the handgun and the police arrival at the residence with the search warrant does not support temporal nexus. While we have considered a purely temporal test,[3] our conclusion that there was probable cause to search the residence is based on the affidavit taken as a whole, with all of its particular facts. See *Commonwealth* v. *Matias*, 440 Mass. 787, 794 (2004), citing *Commonwealth* v. *Atchue*, 393 Mass. 343, 346-349 (1984).

---

[3]The lapse of four days between the shooting and the issuance of the search warrant is not a critical factor is determining whether a warrant should issue. See *Commonwealth* v. *Webster*, 75 Mass. App. Ct. 247, 248-251, 256 (2009) (police obtained search warrant to search apartment seven days after witness identified defendant as having shot him).

*Conclusion.* The order allowing the motion to suppress evidence obtained pursuant to the search warrant is reversed.

*So ordered.*