SUGGS, COMMONWEALTH vs., 100 Mass. App. Ct. 102

 
 COMMONWEALTH vs. DANNY SUGGS.

100 Mass. App. Ct. 102
 December 9, 2020 - August 4, 2021

Court Below: Superior Court, Suffolk County
Present: Massing, Sacks, & Grant, JJ.

 

Corrected August 27, 2021.

Firearms. Practice, Criminal, Motion to suppress. Probable Cause. Search and Seizure, Affidavit, Probable cause, Warrant. Constitutional Law, Search and seizure, Probable cause.

A Superior Court judge properly denied a criminal defendant's pretrial motion to suppress a loaded firearm discovered on his person by police during the execution of a search warrant in the defendant's apartment, where information in the affidavit in support of the warrant (namely, that an informant had seen the defendant with a handgun within the last forty-five days), taken together with other information in the affidavit suggesting that possession of the gun was continuous (e.g., a description of two more recent 911 calls from a caller with apparent firsthand knowledge, stating that the defendant was in possession of a handgun), established probable cause that the defendant still possessed the handgun when the warrant issued [104-107]; and where the affidavit established the nexus between the firearm and the place to be searched, i.e., the defendant's person [107-108].

INDICTMENTS found and returned in the Superior Court Department on November 28, 2018. 

 A pretrial motion to suppress evidence was heard by Robert N. Tochka, J.

 An application for leave to prosecute an interlocutory appeal was allowed by Barbara A. Lenk, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

 Patrick Levin, Committee for Public Counsel Services, for the defendant.

 Shane T. O'Sullivan, Assistant District Attorney, for the Commonwealth.

 GRANT, J. The defendant was indicted for firearms offenses based on the discovery of a loaded firearm on his person during the execution of a search warrant. He moved to suppress, arguing that information in the search warrant affidavit about his possession of a firearm was stale and unreliable and that the affidavit did

 Page 103 

not establish that the firearm would be found on his person rather than in his apartment. When the motion was denied, he sought leave to pursue an interlocutory appeal, which was granted by a single justice of the Supreme Judicial Court, and the case was referred to this court. We affirm the order denying the motion to suppress evidence.

Background. We summarize the facts set forth within the four corners of the affidavit of Boston Police Officer Nicholas Fisher, which was submitted in support of the search warrant application. On November 27, 2017, a 911 call reported a domestic disturbance at a certain apartment in a large apartment building on Lawrence Avenue in Boston. When police responded to the apartment, they met the defendant and a woman, who both stated that they lived there and that they had been having a verbal argument. The woman told the responding officers her name, date of birth, and telephone number, and that information was included in the search warrant affidavit. 

On May 18 and 19, 2018, police received 911 calls from that same telephone number that the woman at the apartment had provided to the police on November 27, 2017. The caller was a woman who stated that the defendant was in possession of a black handgun and had guns inside the apartment. In the 911 calls, the woman told police that she was not then at the apartment. Police officers went to the apartment and spoke to the defendant, but they did not search the apartment. 

Within twenty-four hours before the affiant, Officer Fisher, applied for the search warrant on June 12, 2018, police learned from a confidential informant that within the previous forty-five days the informant had seen a Black male known as "D Suggs," who lived at the apartment, in its living room holding a black semiautomatic handgun. The informant had knowledge of firearms, including the difference between revolvers, semiautomatic handguns, shotguns, and rifles. The affidavit averred that the informant had demonstrated reliability by giving information in the past that had led to the seizure of illegal narcotics and firearms, to the arrests of individuals for firearm-related offenses, and to convictions in both the District and Superior Courts. [Note 1]

 Page 104 

To determine the identity of "D Suggs," Officer Fisher searched police incident reports and found information linking the apartment to Danny Suggs, the defendant. Officer Fisher also found police reports documenting the November 2017 domestic disturbance and the May 2018 911 calls. He obtained a copy of the defendant's registry of motor vehicles photograph and showed it to the informant, who identified it as depicting "D Suggs," the person who had been holding the black semiautomatic handgun at the apartment. Further investigation revealed that the defendant did not possess a license to carry a firearm or a firearm identification card, nor did he own any registered firearms. No one living in the apartment building was licensed to carry a firearm.

The warrant issued, authorizing police to search the defendant's person for evidence including firearms, ammunition, and "any keys which would show domain and/or control over" the apartment. [Note 2] The police executed the warrant and found on the defendant's person two sets of keys and a loaded Walther PPK .380 caliber firearm.

Discussion. 1. Staleness of informant's tip. The defendant argues that the judge should have allowed his motion to suppress because the search warrant affidavit contained stale information that the informant had seen the defendant with the handgun "[w]ithin the last [forty-five] days." We assume that the informant saw the handgun "at the most remote date within that time span," i.e., forty-five days before June 12, 2018. Commonwealth v. Hart, 95 Mass. App. Ct. 165, 167 (2019), quoting United States v. Dauphinee, 538 F.2d 1, 5 n.7 (1st Cir. 1976).

The defendant relies on Hart, 95 Mass. App. Ct. at 166, in which this court concluded that an averment in a search warrant affidavit that an informant had seen a firearm in a home "within the last [sixty] days" did not establish probable cause that the firearm would still be there when police executed the search warrant. Like the affiant in Hart, Officer Fisher opined, based on his training and experience, that firearms are "valuable" and "not easily acquired" if possessed illegally, and so "are often retained for long periods of 

 Page 105 

time." [Note 3] The motion judge ruled that Hart was distinguishable because here the informant saw the defendant with a firearm within forty-five days, not sixty days, of the date of the affidavit. We agree that the forty-five day time span here changes the staleness calculus. See Commonwealth v. Beliard, 443 Mass. 79, 84 (2004) (information "a little less than six weeks old" not stale where defendant kept weapons and ammunition in home). Information that the informant had seen the defendant with the handgun forty-five days before the issuance of the warrant, taken together with other information in the affidavit, established probable cause that the defendant still possessed the handgun when the warrant issued.

Besides the informant's tip and Officer Fisher's opinions based on his training and experience, the affidavit contained "other evidence suggesting that possession of the gun was continuous." Hart, 95 Mass. App. Ct. at 168. [Note 4] It described the 911 calls from May 18 and 19, 2018 -- twenty-four and twenty-five days before the search warrant issued on June 12 -- which "were from a female [caller] who stated that [the defendant] . . . was in possession of a black handgun and that he had guns inside of [the apartment]" (emphases added). The defendant argues that the affidavit's use of the past tense in the verbs "was" and "had" meant that the caller was describing sightings of firearms prior to May 18 and 19. Any such ambiguity in verb tenses did not defeat the magistrate's finding of probable cause. In context, the affidavit used the past tense to describe the sightings of firearms as essentially contemporaneous with the 911 calls, just as, in the same paragraph, it used the past tense to describe that when police responded the defendant "was at 

 Page 106 

the apartment," but the caller "was not present." See Commonwealth v. Conway, 10 Mass. App. Ct. 738, 740 n.1 (1980) (finding "no merit" to argument that because search warrant affidavit did not use present tense to relay informant's tip, it was stale). See also Commonwealth v. Javier, 32 Mass. App. Ct. 988, 988 (1992). Contrast Commonwealth v. Morton, 26 Mass. App. Ct. 949, 950 (1988) (omission of any reference to when informant saw stolen property in premises was "serious defect" in affidavit). Further, that the caller telephoned 911 on two successive days conveyed some degree of immediacy or urgency. Cf. Commonwealth v. McLaughlin, 79 Mass. App. 670, 681 (2011) (multiple 911 calls reporting drunk driver were "urgent"). 

The defendant also argues that the woman 911 caller was not named in the affidavit, and so her reports of seeing a firearm more recently than the informant could not be used to corroborate the informant's tip. See Commonwealth v. Arias, 481 Mass. 604, 619 (2019). See also Commonwealth v. Depiero, 473 Mass. 450, 455 (2016) (anonymous 911 call reliable if caller aware that police could determine caller's identity). We agree with the motion judge that "it is reasonable to infer" that the woman named in the affidavit, who was at the apartment with the defendant in November 2017 and told police that she lived there and gave them her telephone number, was the same woman who, six months later in May 2018, called 911 twice from that same telephone number and reported that the defendant had guns, including a black handgun, inside the apartment. 

 Even if the affidavit did not establish that the 911 caller was aware that police could determine her identity, [Note 5] the affidavit established her basis of knowledge and veracity under the familiar Aguilar-Spinelli test. See Spinelli v. United States, 393 U.S. 410, 415 (1969); Aguilar v. Texas, 378 U.S. 108, 114 (1964). See also Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 81 (2020). The basis of the caller's firsthand knowledge was apparent from the promptness, specificity, and detail of her tip: in calls on two successive days, she described a "black handgun" in the defendant's possession and said that he had guns inside the apartment. See Arias, 481 Mass. at 620 ("the basis of the 911 caller's firsthand knowledge was apparent from the initial tip itself"). See also 

 Page 107 

Commonwealth v. Gonzalez, 90 Mass. App. Ct. 100, 103 (2016) (from specificity and detail of informant's tip that defendant possessed heroin, magistrate could infer that informant saw heroin). Police investigation also confirmed the veracity of the caller's information. In response to the May 2018 911 calls, police went to the apartment and found the defendant there. In addition, police observations of the named woman and the defendant at the apartment in November 2017 corroborated the two May 2018 911 calls from the same telephone number describing the defendant in the same apartment. Cf. Depiero, 473 Mass. at 456-457 (anonymous 911 caller describing drunk driver's car corroborated by police observations of defendant arriving home shortly thereafter). 

 2. Warrant to search defendant's person. The defendant argues that, even if police had probable cause to search his apartment for the handgun, [Note 6] they did not have probable cause to search his person for it. He argues that the search warrant affidavit did not support Officer Fisher's assertion that there was probable cause that the firearm would be found "[o]n the person" of the defendant. We disagree.

 General Laws c. 276, § 1, plainly permits issuance of a warrant to search for evidence "in the possession of a person," and directs that the warrant "nam[e] or describ[e] the person . . . to be searched," as it did here. See J.A. Grasso, Jr., & C.M. McEvoy, Suppression Matters Under Massachusetts Law § 8-2[e][4] (2020). 

 The affidavit established the nexus between the firearm and the place to be searched, i.e., the defendant's person. [Note 7] It included Officer Fisher's opinion, based on his training and experience, that illegal firearms are often acquired "for the purpose of personal protection," and are "kept in close proximity to the owners

 Page 108 

 of said firearms." See Commonwealth v. Ashford, 486 Mass. 450, 455 (2020) ("many people carry handguns for protection or self-defense"). The firearm sought was a "handgun" and thus could be carried or secreted on the defendant's person. Cf. Commonwealth v. Evans, 439 Mass. 184, 198, cert. denied, 540 U.S. 923 and 540 U.S. 973 (2003) (testimony that defendant took gun "out of his pocket" permitted grand jury to infer that barrel length was less than sixteen inches). That a separate warrant issued to search for the handgun in the apartment, see note 2, supra, did not preclude the issuance of the warrant to search for the handgun on the defendant's person. See Commonwealth v. Defrancesco, 99 Mass. App. Ct. 208, 213 (2021) ("a search warrant affidavit may establish probable cause that evidence could be found in more than one location"). See also Commonwealth v. Thevenin, 82 Mass. App. Ct. 822, 826 (2012).

 Rather than rely on a single warrant authorizing the search of both the defendant's apartment and his person, police sought two separate warrants. Cf. Commonwealth v. McCarthy, 428 Mass. 871, 876 (1999) (recommending that police seeking to search both apartment and vehicle request "separate warrant" for vehicle rather than rely on expectation that vehicle would be located within curtilage). Under G. L. c. 276, § 1, the warrant at issue here authorized police to search the defendant's person "anywhere within the commonwealth." Contrast Commonwealth v. Santiago, 410 Mass. 737, 741-742 (1991) (single warrant authorizing search of both defendant's apartment and his person did not permit search of his person "whenever and wherever the defendant was found"); Commonwealth v. Brown, 68 Mass. App. Ct. 261, 267-268 (2007) (warrant to search apartment did not permit search of defendant, though he was occupant, where it did not specify his person as place to be searched and "any person present" provision was overbroad). The warrant to search the defendant's person was properly issued.

Order denying motion to suppress affirmed.

FOOTNOTES
[Note 1] The affidavit explained that the informant's identity and whereabouts were known to the police, but the informant wished to remain anonymous due to concerns for "personal safety," and so details of those other investigations were omitted. The affidavit noted that the informant had "never" given information that had been found to be false or misleading to police in the drug control unit, to which Officer Fisher was assigned. The defendant properly concedes, as he did in the Superior Court, that the affidavit established the reliability of the informant. 

[Note 2] A separate search warrant, based on an identical affidavit, issued for the apartment. The propriety of that search warrant is not before us. 

[Note 3] The affidavit also asserted Officer Fisher's opinion, based on his training and experience, that people who possess firearms unlawfully often do so in "furtherance of on-going criminal acts and to facilitate the committing of further criminal acts." But the affidavit contained no information as to whether the defendant had any criminal record or had committed any other crimes, and so we disregard those assertions. Cf. Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 82 (2020) (search warrant affidavit's assertions about suspect's prior drug arraignments, without information about dispositions of cases, did not add to reliability of information). 

[Note 4] The affidavit contained no information linking the handgun to another crime, which might otherwise give the defendant reason to dispose of it. Cf. Commonwealth v. Alexis, 481 Mass. 91, 103 (2018) ("reasonable to expect" that handgun with which defendant had struck victims during home invasion would be found in defendant's home next day, where it was not fired and thus "not vulnerable to ballistic testing"). See Commonwealth v. Thevenin, 82 Mass. App. Ct. 822, 827 (2012). 

[Note 5] The magistrate could infer that the 911 caller "had reason to believe that [s]he might be identified or that the telephone that [s]he was using might be traced back to h[er]," Depiero, 473 Mass. at 455, because she had given her name and telephone number to police responding to the domestic disturbance six months before. 

[Note 6] The defendant raises no issue with respect to the portion of the warrant authorizing the search of his person for other items, including keys to the apartment, and so we do not reach that issue. Cf. Commonwealth v. Fontaine, 84 Mass. App. Ct. 699, 709-710 & n.11 (2014) (where search warrant affidavit established probable cause to search vehicle for drugs but not firearm, seizure of firearm was proper because it would have been inevitably discovered in plain view during search for drugs). 

[Note 7] The defendant misplaces his reliance on cases discussing the nexus between a crime and the data contained within a cell phone carried on a suspect's person, such as Commonwealth v. White, 475 Mass. 583, 591 (2016), and Commonwealth v. Broom, 474 Mass. 486, 497 (2016). See Commonwealth v. Hobbs, 482 Mass. 538, 547 (2019). Not at issue in those cases was whether a cell phone would be found on a suspect's person. See Commonwealth v. Almonor, 482 Mass. 35, 45 (2019) (cell phones "physically accompany their users everywhere" [citation omitted]). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.